UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

|  |  |
|---|---|
| WCS ENTERPRISES, INC., | ) Case No. 07-10054-SSM |
| Debtor | ) Chapter 7 |

**MEMORANDUM OPINION**

This matter is before the court on the objection, originally filed by the debtor when it was a debtor in possession, to Claim No. 12 filed by Potomac Valley Brick and Supply Company ("Potomac Valley") in the amount of $19,828. The claim is for goods sold to the debtor and includes, in addition to principal and interest, $4,639.56 in attorney's fees. The objection was solely to the claimed attorneys fees. After the case was converted from chapter 11 to chapter 7, the court substituted H. Jason Gold, the chapter 7 trustee, as the objecting party. A hearing was held on November 6, 2007, at which the court heard the contentions of the parties, directed the creditor's attorney to submit time records, and took the matter under advisement. Because only $180.00 of the claimed attorney's fees were incurred prior to the filing of the debtor's petition, and because only over-secured creditors can recover post-petition attorney's fees, the post-petition portion of the claimed fees will be disallowed.

Background

WCS Enterprises, Inc. ("WCS" or "the debtor") is a Virginia corporation that operated a landscape construction business. As a result of the depressed real estate market, business drastically declined and WCS began having difficulty meeting its expenses and paying its taxes. It filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on

1

January 8, 2007, and continued to operate until its case was converted to chapter 7 on

September 4, 2007.

Potomac Valley, which was listed on the debtor's schedules as the holder of a $15,380.47

unsecured claim, filed a timely proof of claim in the amount of $19,828.42, broken down as

follows:

| | |
|---|---:|
| Principal balance | $14,059.27 |
| Interest to date of petition | $1,129.59 |
| Attorney's fees | $4,639.56 |
| Total | $19,828.42 |

Attached to the proof of claim, in addition to an interest computation, is a copy of a credit

application dated August 10, 1995, and what appears to be an internal account statement.  The

terms of the credit agreement are 2% discount if paid in ten days, net 30 days, and 1.5% interest

per month on past due amounts.  The debtor additionally agreed to pay, "all cost of collection

including an attorney's fee of 33% of the then unpaid balance of principle and interest if the

account should be referred to any attorney for collection."   The statement of account reflects

inventory sales of $14,059.27 and posted finance charges of $1,321.21.  No attorneys' fees are

posted to the account, but the calculation attached to the proof of claim shows them to be

computed as 33% of the $14,059.27 principal balance.   Following the hearing, the creditor's

attorney submitted an affidavit itemizing the legal services performed for his client.  The billing

records (which do not disclose either the hours worked or the hourly rate) show $180.00 being

billed for client conferences, review of documents, and preparation of a demand letter in the two-

week period  prior to the filing of the chapter 11 petition.  After the filing, another $180.00 was

charged for a client conference, review of the bankruptcy notice, and filing a proof of claim. The remaining $3,650.00 was billed for defending against the objection to claim.

## Discussion

### A.

On an objection to claim, the court is required to "determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*[.]" § 502(b), Bankruptcy Code (emphasis added). Since the term "claim" is broadly defined to include rights to payment that are unmatured or contingent upon the filing date, See § 101(5), Bankruptcy Code, the fact that the creditor's loss, or some portion of it, has not yet been incurred does not necessarily preclude allowance of a claim that includes future damages. *See Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir. 1998) (holding that automatic stay applied to personal injury claim arising from prepetition use of birth control device manufactured by debtor even though symptoms did not appear, and thus suit could not have been brought, until after the filing of the petition). Thus, except for unmatured interest and unmatured domestic support obligations, which are expressly excluded,[1] nothing in Section 502 of the Bankruptcy Code expressly precludes allowance of a claim for attorneys fees otherwise due by contract simply because the attorney's services were performed post-petition, so long as the event giving rise to the liability occurred prepetition.

Section 502, however, cannot be read in isolation, and in particular must be read in conjunction with Section 506(b) of the Bankruptcy Code, which provides:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the

---

[1] § 502(b)(2) and (5), Bankruptcy Code.

> holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement or State statute under which such claim arose.

§ 506(b), Bankruptcy Code. Thus a *secured* creditor can recover post-petition interest and attorneys fees otherwise provided by contract or state law *only* to the extent it has collateral worth more than the amount of its claim. By implication, an under-secured creditor (one whose collateral is worth less than the amount of its claim) is *not* entitled to post-petition attorneys fees. And if an under-secured creditor is not entitled to post-petition fees, it necessarily follows that a creditor whose claim is *totally* unsecured is not entitled to such fees. *In re Sakowitz, Inc.*, 110 B.R. 268, 272 (Bankr. S.D. Tex. 1989). Section 506(b), in short, operates as a gloss on Section 502(b) to disallow contractual claims for post-petition attorney's fees.

B.

Although Potomac Valley has cited no case that has allowed an unsecured creditor to recover post-petition attorney's fees from the estate,[2] it strenuously urges that the recent decision by the United States Supreme Court in *Travelers Casualty and Surety Co. v. Pacific Gas and Elec. Co.,* — U.S. —, 127 S. Ct. 1199, 167 L.Ed.2d 1199 (2007), compels such a result. The court cannot agree. The narrow issue decided by the Supreme Court in *Travelers* involved a rule that had been articulated by the United States Court of Appeals for the Ninth Circuit in the case of *In re Fobian*, 951 F.2d 1149 (9th Cir. 1991). *Fobian* had held that a creditor could not recover attorney's fees, even where otherwise provided for by contract, for litigating issues

---

[2] Recovery from the *debtor* is allowed in connection with a judgment determining the creditor's claim to be nondischargeable, *see*, *e.g., OSB Manufacturing, Inc. v. Hathaway (In re Hathaway)*, 364 B.R. 220 (Bankr. E.D. Va. 2007), but that is a separate issue, since it does not impact the distribution to other creditors.

4

peculiar to bankruptcy proceedings.³ That limitation was rejected by the Supreme Court in *Travelers*, which explained that a claim was determined in the first instance by the non-bankruptcy law (generally state law) under which it arose, subject to any qualifying or contrary provisions of the Bankruptcy Code. *Id.*, 127 S.Ct. at 1205. The Supreme Court, however, expressly declined to reach the issue of whether Travelers, as an unsecured creditor, could recover post-petition attorney's fees, since that issue had not been raised below, and it remanded the case to the Ninth Circuit for consideration of that argument. *Id.,* 127 S.Ct. at 1207-08.

      Although the Ninth Circuit has not yet ruled on the issue, this court finds persuasive the amici curiae brief filed in the Supreme Court by a group of law professors. Brief in Support of Respondent by Amici Curiae Professors Richard Aaron, et al., 2006 WL 3805866 (Dec. 22, 2006). The amici point out that an early Supreme Court opinion, *Randolph v. Scruggs*, 190 U.S. 533, 539 (1903) (Holmes, J.), stated that an unsecured creditor's contract claim for post-petition legal fees could only be allowed "for services which were beneficial to the estate." The amici further note that *Randolph v. Scuggs* "appears to be the only case in which [the Supreme Court] has ruled on the allowability in bankruptcy of a claimant's unsecured contract claim for postpetition legal fees it incurs during a bankruptcy case." Brief at *9. The policy articulated in *Randoph v. Scuggs* is currently reflected in § 503(b)(3) and (4) of the Bankruptcy Code, which permits a bankruptcy court to allow, as an expense of administration, the legal fees of a creditor that recovers property for the benefit of the estate or that makes a substantial contribution in a

---

³ The Fourth Circuit rejected the *Fobian* analysis in *In re Shangra-La, Inc.*, 167 F.3d 843 (4th Cir. 1999). The Court held in that case that a trustee, in order to assign a defaulted lease under which debtor was the tenant, would have to pay landlord's counsel fees incurred "primarily to collect sums due under the lease or to enforce an obligation of the lessee," as provided for under the lease, even if those efforts occurred in the context of proceedings peculiar to federal bankruptcy law.

chapter 9 or 11 case. In the present case, Potomac Valley does not and cannot contend that the legal fees it incurred to file its proof of claim and litigate its entitlement to attorneys fees provided any benefit to the bankruptcy estate. Indeed, to the extent those efforts were successful, distributions to other creditors would be correspondingly reduced, contrary to the general policy favoring equality of distribution in bankruptcy.

C.

Although not specifically raised by Potomac Valley, the court has considered whether—even though relatively minimal legal services had been provided at the time the chapter 11 petition was filed—Potomac Valley's entitlement to a 33% attorney's fee nevertheless became fixed prior to the filing of the petition when the delinquent account was referred to an attorney for collection. Certainly, had there been a pre-petition judgment that awarded attorney's fees in that amount, such fees would have been allowable as a part of the claim. And if Virginia law would have entitled Potomac Valley to a 33% attorney's fee award without regard to the actual legal services provided simply because the account was "referred to any attorney for collection," then such fees would arguably be a proper component of its claim. However, the holding of the then Supreme Court of Appeals of Virginia in *Cox v. Hagan*, 125 Va. 656, 100 S.E. 666 (1919), makes it clear that an attorney's fee provision in a contract, even though measured as a percentage of the amount due, entitles the creditor only to reasonable fees based on the work performed. *Cox* involved a suit by an endorser who had paid a defaulted note and then sued the makers. The note had contained a provision that the makers and endorsers "agree to pay costs of collection or ten per cent. attorney's fees in case payment shall not be made at maturity." *Id.* at 658, 100 S.E. at 668. Because of other errors, the Court awarded a new trial but addressed the

6

issue of the attorney's fees, which the makers had defended against as unreasonable. The Court held that upon remand,

> the judge, upon the issue being made as to what amount is recoverable under the attorney's fee provision aforesaid, should allow *only such an amount as may be reasonable*, considering the services of the attorney actually performed in and about the collection of the debt in view of the customary charges of the profession in the locality for such services, not exceeding the maximum amount stipulated in the obligation.

*Id.* at 663, 100 S.E. at 673 (emphasis added). *See, also*, *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991) (reversing award of ten percent attorneys fees for collecting promissory note as "bear[ing] no relation to the attorney's time and effort or to the nature of his services."); *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624, 499 S.E.2d 829, 833 (1998) (explaining that in determining reasonable attorney's fee, fact finder may consider "the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary or appropriate."); *First American Bank v. Wills*, 25 Va. Cir. 91 (Va. Cir. Ct. 1991) ("Regardless of the amount stipulated, the holder of a note which provides for and fixes an amount for attorney's fees is only entitled to recover the reasonable attorney's fees incurred by him, not to exceed the amount specified in the contract or note."). Since the billing records supplied by Potomac Valley's attorney do not show the time expended on the various tasks, it would be difficult in any event to make a determination of reasonableness. For the purpose of this opinion, however, the court will assume the reasonableness of the $180.00 in billed charges for the work the attorney did prior to the filing of the chapter 11 petition. But given the opinions of Virginia's highest court in *Cox*, *Mullins*, and *Chawla*, the court cannot find that the Potomac

Valley's attorney—based on the simple drafting of a demand letter—had a fixed entitlement to a 33% fee as of the date the debtor filed its petition  Accordingly, although the court will allow the $180.00 in billed pre-petition fees as part of the claim, the remainder will be disallowed.

     A separate order will be entered allowing Potomac Valley's claim in the reduced amount of $15,368.56.

Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge


Copies to:

George LeRoy Moran, Esquire
Moran Monfort, P.L.C.
4041 University Drive, Suite 301
Fairfax, VA 22030-3410
Counsel for the debtor

H. Jason Gold, Esquire
Wiley Rein LLP
7925 Jones Branch Drive
Suite 6200
McLean, VA 22102
Chapter 7 trustee

James D. Fullerton, Esquire
Fullerton & Knowles, P.C.
12644 Chapel Road, Suite 206
Clifton, VA 20124
Counsel for Potomac Valley Brick & Supply Co.